IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GUATEMION "JUAN" MOSLEY,<br><br>     Plaintiff,<br><br>vs.<br><br>PRESTON CYCLES WEST, LLC d/b/a THUNDER TOWER WEST HARLEY-DAVIDSON,<br><br>Defendant.<br><br>_____ | CIVIL ACTION FILE NO.<br><br>1:19-CV-03937-SCJ-JSA |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**COMES NOW** Guatemion "Juan" Mosley ("Plaintiff" or "Mosley"), by and through undersigned counsel, and hereby files this First Amended Complaint and Jury Demand against Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson ("the Company" or "Defendant") as follows:

**PRELIMINARY STATEMENT**

1

1. Plaintiff brings this civil action to recover damages against Defendant for its violation of Title VII of the Civil Rights Act of 1964 ("Title VII") concerning sexual harassment, the discriminatory imposition of various adverse changes in Plaintiff's terms and conditions of employment and his termination from employment on the basis of race and in retaliation for Plaintiff engaging in the protected activity of reporting sexual harassment or opposing what he reasonably believed to be illegal sexual harassment. In addition to the above, Plaintiff brings this civil action pursuant to 42 U.S.C. §1981 ("Section 1981") concerning his termination from employment on the basis of his race, color or ethnicity. Plaintiff's specific allegations and claims are described more particularly in Counts I, II, III and IV set forth herein below.

## PARTIES

2. Plaintiff is an individual and a resident of the State of Georgia.

3. Plaintiff is an African-American adult male.

4. Plaintiff was previously employed as a Motorcycle Sales Associate for Defendant at its Thunder Tower West Harley-Davidson store located at 1384 Southlake Parkway, Morrow, GA 30260.

5. Defendant is a domestic limited liability corporation registered with the Georgia Secretary of State and Defendant operates and exists under the laws of the State of Georgia.

## SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction concerning Plaintiff's civil action pursuant to 28 U.S.C. §1331 as the allegations in this civil action concern the laws of the United States of America.

## PERSONAL JURISDICTION

7. Defendant may be served with process concerning this civil action through its registered agent, registered with the Georgia Secretary of State Corporations Division: Paracorp Incorporated, 453 Hardy Ives Lane, Lawrenceville, GA 30045.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the employment practices and other conduct engaged in by Defendant concerning Plaintiff's Complaint occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

9. Plaintiff filed a Charge of Discrimination, Number 410-2018-07370, against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 13, 2018. (See Exhibit No. 1).

10. On June 4, 2019 the EEOC issued Plaintiff a Right to Sue letter for EEOC Charge Number 410-2018-07370 ("Right to Sue Letter"). (See Exhibit 2)

11. Plaintiff has filed the present civil action within 90 days of receiving the Right to Sue Letter.

12. Administrative prerequisites have been met prior to filing this civil action.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates by reference paragraphs 1 through 12 hereinabove as though set forth fully and separately herein.

14. Defendant is a full-service Harley Davidson Dealership selling new and pre-owned Harley Davidson motorcycles, parts, and motorcycle themed clothing. Defendant also rents and services Harley Davidson motorcycles.

15. Plaintiff began working for Defendant on or about April 10, 2017 as a full-time employee Motorcycle Sales Associate.

16. Beginning on or about April 10, 2017 through the date of his unlawful termination on April 18, 2018 Mr. Mosley was one of the Company's top Motorcycle Sales Associate.

17. Per Plaintiff's employment agreement with the Company, the first 90 days of Plaintiff's employment was considered an introductory period.

18. During this introductory period, Plaintiff received on the job training and at the end of the introductory period an opportunity to discuss his progress and goals with management.

19. Plaintiff concluded his 90-day period successfully as he proved himself throughout this period of time to be a top sales person and asset to the Company.

20. During the period of time from April 2017 through April 2018 persons who worked in management for the Company on a day-to-day basis, specifically at its Thunder Tower West Harley-Davidson dealership, included but is not limited to the following individuals:

    a. Jeanne Chambers – Human Resources Manager

    b. Robert Hammers – General Sales Manager

    c. Monique Perry – Motor Clothing Department Manager

21. On or about the first week of March 2018, Defendant added Jeff Lewis (Caucasian) as a member of its management team. Mr. Lewis assumed the role as the General Manager of the Thunder Tower West Harley-Davidson dealership.

22. Although Plaintiff was a top sales person and asset to the Company, his fate at the Company quickly took a turn for the worse after reporting a serious allegation of sexual harassment and after Mr. Lewis's arrival as General Manager wherein he displayed and ultimately effectuated his racial bias and animus.

23. On April 18, 2018 Mr. Mosley was terminated from his position with the Company.

## COUNT I
(Sexual Harassment Hostile Work Environment
in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

24. Plaintiff incorporates by reference paragraphs 1 through 23 hereinabove as though set forth fully and separately herein.

25. On January 5, 2018 Plaintiff lodged a complaint of sexual harassment against Monique Perry, Motor Clothing Sales Manager.

26. On several occasions during the month of December 2017 Ms. Perry made unwelcome sexual harassing comments to Mr. Mosley including but not limited to the following the following statements or words to the effect:

    a. "you are a whore"

    b. "you date too many women"

    c. "who did you wake up with today"

    d. "one of these customers must be one of your hoes"

27. On various dates throughout the month of December 2017 Mr. Mosley discovered unwelcome sexually harassing text messages on his cell phone from Ms. Perry including but not limited to:

    a. sexually suggestive emojis

    b. a picture of a can of Vienna sausages

  c. a picture of a random older women with statement about Plaintiff having sex with her, and

  d. a picture of a naked transsexual male with exposed breasts and an erect penis and reference to Plaintiff having sex with this individual.

28. Mr. Mosley was shocked, distraught, humiliated, distressed and felt violated by the unwelcome sexually harassing conduct and said conduct effectively adversely changed his work environment.

29. Plaintiff's complaint of hostile work environment sexual harassment was not taken seriously by the Company.

30. On or about January 8, 2018 the Company called a meeting in response to Plaintiff's January 5, 2018 claim of sexual harassment.

31. At this January 8, 2018 meeting in attendance was Gene Preston, the owner of the company, Jeanne Chambers, Human Resources Manager, Betty Preston, the owner's wife, Robert Hammers, the General Sales Manager and Mr. Mosley.

32. Shockingly at this same January 8, 2018 meeting the Company invited and allowed the perpetrator of the sexual harassment engaged in against Mr. Mosley, Clothing Sales Manager Monique Perry, to also attend.

33. Plaintiff was surprised and uncomfortable with having Ms. Perry attend the meeting.

34. Ms. Perry a member of the Company's management, admitted to the sexual harassment.

35. Plaintiff was asked what should happen to Ms. Perry as result of the sexual harassment towards him (i.e. – should she be terminated).

36. Plaintiff felt pressured and under duress when he was asked this question concerning his sexual harasser, as he reasonably believed that he could be subject to some type of retaliation from if he suggested or demanded her termination.

37. Defendant failed to exercise reasonable care to correct and prevent future sexual harassment, by having Ms. Perry present during this investigatory meeting and posing a question to Plaintiff to decide Ms. Perry's fate.

38. Plaintiff was further shocked, distraught, humiliated, and distressed by the way the investigation was handled and viewed it as no real recourse having occurred to correct the harassment.

39. Plaintiff continued to feel as though the conduct effectively adversely changed his work environment, a condition under which he was employed.

40. Plaintiff felt as if there would be a "chilling effect" on his or any other employees' future attempts of reporting sexual harassment in the workplace as the result would be that the alleged perpetrator would be present and be placed him in a further stressful and humiliating circumstance.

41. Defendant violated Title VII and is liable as result of the sexual harassment against Plaintiff.

## COUNT II

(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

42. Plaintiff incorporates by reference paragraphs 1 through 41 hereinabove as though set forth fully and separately herein.

43. Plaintiff engaged in the activity protected under Title VII by, on or about January 5, 2018, reporting sexual harassment.

44. Several terms of conditions of Plaintiff's employment worsened after he reported the sexual harassment in January of 2018 and he suffered these adverse actions because of his protected activity.

45. On or about February 20, 2018 Defendant suspended Plaintiff for seven days without pay although he called into work and informed the Company that he would not be into work that day due to car trouble.

46. On or about various dates following January 5, 2018, Plaintiff was not given credit for and removed from transactions where he initiated the sale with the customer.

47. Plaintiff was paid on commissions basis of 10% commission from the gross profit of each motorcycle sale plus an additional sliding scale bonus per number of units sold each month.

48. Defendant's removal of Plaintiff from the transactions deprived him of compensation.

49. Defendant also sent Plaintiff home before the end of his normal work hours which deprived him of the opportunity to work and obtain sales and commissions.

50. Defendant violated Title VII by retaliating against Plaintiff for participating in protected activity, when it suspended him, sent him home early and deprived him of commissions by removing him from receiving credit for sales transactions.

## COUNT III

(Race, Color, Ethnicity Discrimination in Violation of
Title VII, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. §1981)

51. Plaintiff incorporates by reference paragraphs 1 through 50 hereinabove as though set forth fully and separately herein.

52. On or about a date in the first week of March 2018 Defendant hired Jeff Lewis as its sales manager.

53. On or about a date after Mr. Lewis' hire, one day he asked Plaintiff "what is that you are wearing?" while looking him up and down. Plaintiff was wearing true religion jeans that were tie-die and stretched, an urban-styled outfit.

54. Plaintiff's tenure with the Company was short-lived after Mr. Lewis' arrival.

55. Plaintiff is aware of Mr. Lewis asking the race of customers who visited Defendant's store when discussing them with sales associates.

56. Plaintiff is aware of Mr. Lewis treating African-American employees in a demeaning, insulting, derogatory and degrading way by engaging in acts such as but not limited to:

    a. making passing insults about their hair;

    b. making passing insults about their eyes,

    c. making inappropriate comments about a female African-American woman's backside.

    d. bullying

    e. yelling; and

    f. behaving with hostility

57. For example, Plaintiff witnessed Mike Davis (an African-American male) being cursed out by Mr. Lewis on the sales floor.

58. As General Manager of the Company, Mr. Lewis served as a decision maker concerning hiring and firing decision and/or was instrumental in making recommendations concerning hiring and firing decisions.

59. Defendant terminated Plaintiff's employment, effective immediately, on April 18, 2018.

60. Upon information and belief Plaintiff is aware that on or about a date shortly after Plaintiff's termination from the Company, Danny O'Keefe an employee of the Company asked why Mr. Mosley was terminated and Mr. Lewis responded that he did not like Mr. Mosley wearing "FUBU" to work every day.

61. "FUBU" stands for "For Us By Us" and is an hip hop apparel company.

62. FUBU apparel is marketed to and worn largely by African-Americans.

63. Defendant violated Title VII by terminating Mr. Mosley because of his race.

## COUNT IV

(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. §1981

concerning Mr. Mosley's termination)

64. Plaintiff incorporates by reference paragraphs 1 through 63 hereinabove as though set forth fully and separately herein.

65. Despite completing his 90-day introductory period with flying colors and becoming a top sales associate at the Company, following his report of sexual harassment, Defendant began labeling Plaintiff as disrespectful, uncooperative, and difficult.

66. Defendant characterized its interactions with Plaintiff in the above-described ways as pretext for ending his employment for reporting conduct of sexual harassment and/or because of his race.

67. In addition to the unlawful basis of race, color, or ethnicity Plaintiff was also terminated based on the unlawful basis of engaging in protected activity.

## JURY TRIAL DEMAND

68. Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE based on the above stated claims that Defendant has violated Plaintiff's rights afforded to him under Title VII of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §1981, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to compensation for emotional distress, mental anguish and inconvenience;

B. Back pay and benefits;

C. Front pay and benefits;

D. Punitive damages;

E. Attorneys' fees and costs of this action, as permitted by law;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief as the Court deems just and proper.

Respectfully submitted this 10th day of April 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: s/ *Jermaine A. Walker*

Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax: same #) 404-301-4020
jwalker@hkm.com

**Attorney for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GUATEMION "JUAN" MOSLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>PRESTON CYCLES WEST, LLC d/b/a THUNDER TOWER WEST HARLEY-DAVIDSON,<br><br>    Defendant. | Civil Action File No:<br><br>1:19-CV-03937-SCJ-JSA |

**CERTIFICATE OF SERVICE**

I certify that on April 10, 2020 I electronically filed Plaintiff's **FIRST AMENDED COMPLAINT AND JURY DEMAND** with the Court using the CM/ECF system, which will automatically send e-mail notification of this filing to Defendant's attorney of record:

Meredith Riggs Guerreo, Esq.
Drew Eckl & Farnham, LLP
303 Peachtree Street NE, Suite 3500
Atlanta, Ga  30308

17

This is to further certify that the foregoing document was prepared using 14 point Times New Roman font.

This 10th day of April 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: s/ *Jermaine A. Walker*

Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax: same #) 404-301-4020
jwalker@hkm.com
Georgia Bar No. 142044

**Attorney for Plaintiff**